IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:19-cr-0183 |
| v. | : | |
| OMOYOMA OKORO | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court is a motion to dismiss filed by Defendant Omoyoma Okoro ("Okoro") in advance of trial. (Doc. 84.) Okoro asserts that the indictment should be dismissed based on the applicable statute of limitations and because the Government violated his due process rights under the Fifth and Sixth Amendments. (*Id.*) Because the court finds that Okoro fails to meet his burden, the motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A criminal complaint was filed against Okoro on April 27, 2019. (Doc. 1.) Okoro was arrested on April 3, 2019, and released with conditions following a detention hearing on May 13, 2019. On June 6, 2019, the Government filed a five-count indictment against Okoro alleging one count of conspiracy to commit mail fraud affecting a financial institution, wire fraud affecting a financial institution, and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); one count of mail fraud affecting a financial institution in violation of 18 U.S.C. § 1341 and § 2 (Count 2);

1

two counts of wire fraud affecting a financial institution in violation of 18 U.S.C. § 1343 and § 2 (Counts 3 and 4); and one count of bank fraud in violation of 18 U.S.C. § 1344 and § 2 (Count 5).  (Doc. 19.)

In the indictment filed on June 6, 2019, it is alleged that Okoro was a resident of Nigeria prior to 2013.  (Doc. 19, p. 1.)[1]  Between on or about 2007 and 2011, within this District and elsewhere, it is alleged that Okoro conspired with others to engage in an "attorney collection scheme" to commit various crimes including mail fraud and wire fraud affecting a financial institution, and bank fraud.  (*Id.* at 3–4.)  It is alleged that Okoro, along with others, attempted to "fraudulently obtain more than $60 million from approximately 150 victim lawyers and law firms, and did, in fact, fraudulently obtain more than $20 million from more than 90 victim lawyers and law firms via the 'attorney collection scheme.'"  (*Id.* at 4.)

The indictment alleges five overt acts for the conspiracy at Count 1.  On or about August 13, 2008, Okoro and "his co-conspirators caused victim attorney R.G. of the G.L.G. law firm in Carlisle, Pennsylvania to wire $244,278 to the Korea Exchange Bank."  (*Id.* at 5.)  On or about August 14, 2008, Okoro emailed "Conspirator #1 which reported that G.L.G. sent $244,278 to the Korea Exchange Bank."  (*Id.*)  On or about February 3, 2010, Okoro "received an e-mail from

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Conspirator #1 with the subject "AZA" which contained information for several bank accounts, including Account Number 4750401-0188-24461-1 at the Bank of China." (*Id.*) On or about February 5, 2010, Okoro and "his co-conspirators caused victim attorney J.B. to wire $234,086 to Account Number 4750401-0188-244661-1 at the Bank of China." (*Id.*) Lastly, on or about February 5, 2010, Okoro emailed "Conspirator #1 indicating that victim attorney J.B. wired $234,086 to Account Number 4750401-0188-244661-1 at the Bank of China." (*Id.* at 6.)

As to Count 2, the indictment alleges that on or about January 12, 2010, Okoro committed mail fraud affecting a financial institution by mailing a counterfeit check for $350,000 to attorney A.M. in Harrisburg, Pennsylvania from Toronto, Canada, using DHL. (*Id.* at 6–7.) The alleged affected financial institutions are Citibank and M&T Bank. (*Id.* at 7.)

Counts 3 and 4 of the indictment allege that Okoro committed wire fraud affecting a financial institution by sending two emails dated January 5, 2010, and January 19, 2010. (*Id.* at 7–8.) Those emails were sent from Manny Chen, mcmchen9@gmail.com, to attorney A.M., atmlaw1@verizon.net. (*Id.* at 8.) The January 5, 2010 email, which provides the basis for Count 3, generally requested legal representation and a retainer agreement. (*Id.*) The January 19, 2010 email, which provides the basis for Count 4, provides instructions to wire $275,000 to

"ABN AMRO Bank, NV Singapore, Global Vision LTD, Acct. #05 03 12 928." (*Id.*) Both emails are alleged to have affected Citibank and M&T Bank. (*Id.*)

Lastly, regarding Count 5, it is alleged that Okoro committed bank fraud by using false and fraudulent pretenses to cause a counterfeit Citibank check payable to attorney A.M. in the amount of $350,000 to be deposited into attorney A.M.'s trust account at M&T Bank in Harrisburg, Pennsylvania. (*Id.* at 9–10.) The false and fraudulent pretenses further caused $275,000 of that counterfeit check to be transferred by wire to "ABN AMRO Bank, NV Singapore, Global Vision LTD, Acct. #050312928 on or about 1/19/10." (*Id.*)

On September 17, 2019, the Government filed a motion for joinder of trial, along with a brief in support, to join Okoro and Omoefe Okoro's federal criminal case for trial. (Docs. 31, 32.) Omoefe Okoro concurred in the joinder request, but Okoro's counsel did not respond to attempts by the Government to obtain concurrence or non-concurrence. (Docs. 31-1, 31-2.) The court granted the Government's motion on the same day.[2] (Doc. 33.) Trial was continued many times for a variety of reasons with a date-certain trial scheduled to begin on April 17, 2023. (Doc. 73.) However, on March 31, 2023, the court dismissed the indictment against Omoefe Okoro for violation of his Sixth Amendment right to a

---

[2] This case was initially assigned to Judge Sylvia H. Rambo but was reassigned to the undersigned on April 11, 2022. (Doc. 55.)

4

speedy trial. *See United States v. Okoro*, No. 12-cr-241, 2023 WL 2742737 (M.D. Pa. Mar. 31, 2023). On April 3, 2023, Okoro requested to continue trial because of the changed circumstances in his case now that his brother's case was dismissed. (Doc. 78.) The court granted Okoro's request and set a new date-certain for trial on September 11, 2023. (Doc. 80.)

Okoro filed the instant motion to dismiss the indictment on July 12, 2023, as well as brief in support on July 20, 2023. (Docs. 84, 85.) The Government filed a brief in opposition on August 3, 2023, and Okoro filed a reply brief on August 18, 2023.[3] Thus, this motion is ripe for review.[4]

---

[3] On August 10, 2023, Okoro filed an additional brief that is identical to his original brief in support. (*Compare* Doc. 85, *with* Doc. 90.) Because these briefs are identical, the court will only consider the original brief in support, Doc. 85, in addition to the reply brief, Doc. 91.

[4] In his motion, Okoro requests a hearing, but does not specify why a hearing is needed. Because the court is not required to make any factual findings to resolve this motion, the court denies Okoro's request.

5

**DISCUSSION**

Okoro argues two different theories for dismissal of this case, which will be addressed in turn.[5]

**A. Statute of Limitations**

Okoro asserts that the overt acts alleged in the indictment are outside the ten-year statute of limitations and, thus, the indictment should be dismissed "as to the conduct and alleged loss that was outside of the ten-year statute of limitations." (Doc. 84, pp. 4–5; Doc. 85, pp. 2–3.)

While it is unclear whether Okoro challenges all counts in the indictment, the Government submits that all counts are within the applicable ten-year statute of limitations. (Doc. 88, pp. 4–7.) As to Count 1, the Government argues that the ten-year statute of limitations for an ongoing conspiracy does not begin to run until the "last act is done in furtherance of the conspiracy." (*Id.* at 5.) The Government submits that the alleged conspiracy spanned from 2007 to 2011 and the indictment alleges overt acts that occurred on February 3, 2010, and February 5, 2010. (*Id.* at 5–6.) Further, the Government asserts that the evidence at trial will establish

---

[5] Okoro also raised a "habeas corpus" claim arguing that the indictment was deficient under Federal Rule of Criminal Procedure 12. (Doc. 84, pp. 9–11.) However, in his reply brief, Okoro conceded this issue, stating: "The United States' Indictment of Omoyoma on its face unquestionably states an offense against him. At this point in the proceedings that would appear to be legally enough . . . . and the next step is a trial on the merits." (Doc. 91, p. 7.) Thus, the court considers the request to dismiss the indictment based on habeas corpus relief withdrawn and will not rule on that issue.

additional acts in furtherance of the conspiracy that occurred in September 2010. (*Id.* at 6.) Regarding Counts 2 through 5, the Government acknowledges that Okoro does not seem to challenge the statute of limitations. However, to the extent he does, the Government submits that the applicable statute of limitations is ten years, and the alleged conduct took place in 2010, which was within the statute of limitations. (*Id.* at 6–7.)

Under 18 U.S.C. § 3293, the statute of limitations for offenses under 18 U.S.C. §§ 1344, 1341 or 1343 if the offense affects a financial institution, or a conspiracy to commit these offenses, is ten years. For a conspiracy offense, the statute of limitations begins to run "when the conspirators commit the last overt act in furtherance of the conspiracy." *United States v. Hoffecker*, 530 F.3d 137, 157 (3d Cir. 2008) (citing *United States v. Jake*, 281 F.3d 123, 129 n.6 (3d Cir. 2002)).

Regarding Count 1, the indictment alleges a conspiracy that took place between on or about 2007 and 2011 under Section 1349 to violate Sections 1341 and 1343, mail and wire fraud affecting a financial institution, and 1344, bank fraud. (Doc. 19, pp. 3–6.) The indictment alleges five overt acts on dates ranging from August 13, 2008, through February 5, 2010. (*Id.* at 5–6.) The conduct that occurred ten years prior to the indictment, i.e. after June 6, 2009, is squarely within the statute of limitations. Furthermore, the alleged conduct that occurred prior to June 6, 2009, is properly included because the statute of limitations did not begin

7

to run until the last overt act alleged in furtherance of the conspiracy took place, which is alleged to have occurred on February 5, 2010. Therefore, the conduct alleged in Count 1 is within the statute of limitations, and dismissal of this count is not required.

Count 2 alleges a violation of Section 1341, mail fraud affecting a financial institution, on or about January 12, 2010. (Doc. 19, pp. 6–7.) Counts 3 and 4 allege a violation of Section 1343, wire fraud affecting a financial institution, on or about January 5, 2010, and January 19, 2010. (*Id.* at 7–8.) Lastly, Count 5 alleges a violation of Section 1344, bank fraud, on or about January 19, 2010. (*Id.* at 9–10.) Thus, the conduct alleged in Counts 2 through 5 of the indictment, which was filed on June 6, 2019, clearly falls within the applicable ten-year statute of limitations such that dismissal of Counts 2 through 5 is not required.

## B. Due Process

Next, Okoro asserts that his due process rights have been violated because the Government deported his brother and former co-defendant, Omoefe Okoro, to Canada upon his release from custody. He asserts that his brother would have been a witness on his behalf at trial. (Doc. 84, pp. 6–8; Doc. 85, pp. 3–6.) Citing the Fifth and Sixth Amendments, Okoro submits that because Omoefe Okoro was a material witness for Okoro and under the Government's control, the Government had an obligation to ensure that Omoefe Okoro was not made unavailable for trial.

(Doc. 84, p. 7; Doc. 85, pp. 4–5.)  Okoro argues that there was a reasonable likelihood that Omoefe Okoro would have played a significant role in Okoro's defense.  (Doc. 84, pp. 7–8; Doc. 85, pp. 5–6.)  Now, because Omoefe Okoro is unavailable, Okoro asserts that his due process rights have been violated if his indictment is not dismissed.  (Doc. 84, pp. 7–8; Doc. 85, pp. 5–6.)

In opposition, the Government argues that Okoro "has not asserted that he has made any effort to secure Omoefe Okoro's testimony at trial and that Omoefe Okoro is actually unavailable despite such efforts."  (Doc. 88, p. 7.)  Additionally, the Government submits that Omoefe Okoro's "unavailability" is no fault of the Government.  (*Id.*)  Rather, the Government litigated Omoefe Okoro's motion to dismiss, but the court dismissed the indictment with prejudice and ordered Omoefe Okoro released from custody.  (*Id.*)  Omoefe Okoro immediately and voluntarily returned to Canada without the Government's involvement.  (*Id.* at 7–8.)  Finally, the Government submits that even if the Government's actions resulted in Omoefe Okoro's absence, that absence is not sufficient to warrant dismissal without Okoro making "some plausible showing of how the testimony would have been both material and favorable to his defense."  (*Id.* at 8–10 (quoting *United States v. Chavez*, No. 19-3913, 2021 WL 4429837, at *3 (3d Cir. Sept. 27, 2021)).)

The Fifth Amendment guarantees that a defendant shall not "be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.

And the Sixth Amendment entitles a defendant to, among other rights, a "compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. The United States Supreme Court examined these concepts in the context of a deported potential witness in *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). The Court held that:

> The mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment. A violation of these provisions requires some showing that the evidence lost would be both material and favorable to the defense.

*Id.* at 872–73. Further, there must be "a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* at 874. Ultimately, the Court concluded that without an "effort to explain what material, favorable evidence the deported [potential witnesses] would have provided for his defense," the defendant could not establish a violation of the Fifth or Sixth Amendments. *Id.*

Initially, the court observes that the Government did not deport Omoefe Okoro, and Okoro provides no evidence to the contrary. Indeed, Omoefe Okoro self-deported to Canada on April 1, 2023, the day after the court ordered dismissal of his charges and immediate release from detention. *See* Doc. 88-1; *United States v. Okoro*, No. 12-cr-241, 2023 WL 2742737 (M.D. Pa. Mar. 31, 2023). Thus, there is no evidence that the Government deported Omoefe Okoro, nor does Okoro point

to any authority that would have permitted the Government to prohibit Omoefe Okoro from leaving the United States under the circumstances presented.

Applying the standard established in *Valenzuela-Bernal* to the case at hand, Okoro has not made any "effort to explain what material, favorable evidence" Omoefe Okoro would have provided in support of Okoro's defense. *See Valenzuela-Bernal*, 458 U.S. at 874. Further, the Government's skepticism that Omoefe Okoro would be willing to appear as a witness in Okoro's case given the history of Omoefe Okoro's criminal case and the potential consequences for testifying on his brother's behalf is reasonable and not unduly speculative.

In sum, Okoro has neither established that the Government is at fault for removing Omoefe Okoro from the United States nor that the lost testimony is material and favorable to Okoro's defense. Therefore, the court will deny the motion to dismiss on the Constitutional grounds.[6]

---

[6] In his reply brief, Okoro raises a Sixth Amendment violation and Speedy Trial Act violation. (Doc. 91, pp. 3–6.) The court will not address this argument because it was raised for the first time in Okoro's reply brief and the Government did not have an opportunity to respond. However, the court notes that Okoro's situation is vastly different from that of his brother, Omoefe Okoro, who was extradited from Canada in 2017 and detained pending trial until the court granted his motion to dismiss on March 31, 2023. *See United States v. Okoro*, No. 12-cr-241, 2023 WL 2742737 (M.D. Pa. Mar. 31, 2023).

## CONCLUSION

For the reasons state herein, the court will deny Okoro's motion to dismiss the indictment. An appropriate order follows.

>s/Jennifer P. Wilson
>JENNIFER P. WILSON
>United States District Judge
>Middle District of Pennsylvania

Dated: August 30, 2023